## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **AUDACITY CHURCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-215-CVE-SH** |
| | ) | |
| **CHURCH MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

Now before the Court is defendant Church Mutual Insurance Company's motion for summary judgment (Dkt. # 20). Defendant Church Mutual Insurance Company (CMIC) argues that plaintiff Audacity Church was not a named insured under a policy issued to the Nazarene Advisory Board (the Board), and Audacity Church's property located at 2744 East 12th Street in Tulsa, Oklahoma was removed as a covered property from the Board's insurance policy in January 2020. CMIC asserts that it appropriately denied Audacity Church's claim for property damage caused by a lightning strike on April 28, 2020, due to the lack of insurance coverage when the loss occurred. Audacity Church responds that it had an insurable interest in the property and the intent of the policy was to provide insurance coverage to Audacity Church as a co-insured or third-party beneficiary. Dkt. # 21, at 2-3. Audacity Church also claims that the Board expected Audacity Church to obtain its own property insurance, but a misrepresentation by a representative of CMIC mistakenly led Audacity Church to believe that the property was still covered. <u>Id.</u> at 5.

### I.

CMIC issued a commercial property insurance policy to the Board.  Dkt. # 20-2.  The declarations page of the insurance policy identifies the named insured as the "Northeast Oklahoma District Church of the Nazarene Advisory Board Inc."  Id. at 15.  The premises covered by the insurance policy are listed in the declarations page, and one of the covered properties was the "Midtown Church" located at 2744 East 12th Street.  Id. at 20.  Only the named insured listed in the policy "is authorized to make changes in the terms of this policy with our consent."  Id. at 40.  The insurance policy expressly identifies the buildings listed on the declarations page as "covered property," rather than as a named insured under the policy.  Id. at 77.  In August 2017, CMIC adjusted a claim submitted by the Board for roof damage at Midtown Church, and correspondence concerning the claim was addressed to Audacity Church's lead pastor, Ronnie Baker, and the Board.  Dkt. # 21-9, at 1.  However, the letter clearly identifies the Board as the named insured.  Id.  The policy expressly permits CMIC to "adjust losses with the owners of lost or damaged property if other than you" in order to satisfy an insurance claim submitted by the Board, but the policy does not treat the owners of covered property as an insured under the policy.  Dkt. # 20-2, at 60.

On May 28, 2019, the policy was amended to remove the Midtown Church property as a covered property under from the insurance policy, and CMIC returned $5,221 in premiums to the Board.  Dkt. # 20-3.  Several months later, the Board added the Midtown Church property back to the policy, and the Board paid the required premium to CMIC.  Dkt. # 20-4.  On January 28, 2020, CMIC sent a letter to the Board stating that the Midtown Church property had again been removed from coverage under the policy, and CMIC returned $7,144 in premiums to the Board.  Dkt. # 20-5, at 2.  The Midtown Church property was removed from the policy after CMIC received an e-mail from the Board on January 20, 2020 requesting that CMIC remove the property from the policy.

Dkt. # 20-9, at 1.  In June 2020, CMIC received a claim for property damage caused by a lightning strike at Midtown Church.  Dkt. # 20-6.  CMIC responded that it would investigate the claim, and all correspondence from CMIC identified the named insured as the Board.  Dkt. # 20-6; Dkt. # 20-7; Dkt. # 20-9.  The loss allegedly occurred on April 28, 2020, after the Board had removed the Midtown Church property from the policy.  Dkt. # 20-6.  CMIC investigated the claim and determined that the Midtown Church property was no longer covered under the Board's policy, and it appears that either the Board or Midtown Church requested to add the property back to the policy and for the addition to be backdated.  Dkt. # 20-9, at 1.  CMIC declined to add the Midtown Church property to the policy but, instead, CMIC issued a new insurance policy strictly for the Midtown Church property with an effective date of June 25, 2020.  Id. at 1.  CMIC denied the claim for property damage due to the lack of insurance coverage at the time of the loss.  Id. at 2.

Plaintiff claims that the Midtown Church property was removed from the Board's insurance policy due to a misunderstanding with the Board, because the Board anticipated that plaintiff would obtain its own property insurance, and removed the Midtown Church property from the policy before verifying that plaintiff had actually obtained insurance coverage.  Dkt. # 21-7, at 1.  Baker states that he was not notified that the Midtown Church property had been removed from the Board's insurance policy, and he claims that CMIC told plaintiff that its property was still covered under the insurance policy as of January 28, 2020.  Dkt. # 21-7.  Plaintiff claims that it did not obtain its own property insurance due to this misrepresentation by CMIC.  Id.  The evidence does not fully support Baker's representations concerning plaintiff's communications with CMIC and the removal of the Midtown Church property from the Board's policy.  On January 28, 2020, CMIC formally issued a letter to the named insured, the Board, showing that the Midtown Church property had been

removed from the insurance policy and that the premiums had been refunded to the Board.  Dkt. #
20-5, at 2.  On the same day, CMIC sent an e-mail to Ronnie Baker stating that CMIC had "attached
an electronic copy of your multi-peril policy" to the e-mail.  Dkt. # 21-8.  Baker's affidavit (Dkt. #
21-7) states that this e-mail led him to believe that the policy was in "full force and effect" as to
plaintiff's property, although he does not state that he actually reviewed the copy of the policy
attached to the e-mail to determine if plaintiff's property was still covered under the Board's policy.
Dkt. # 21-7, at 1.  The e-mail does not contain an express representation by CMIC that the Midtown
Church property was still covered under the policy, but Baker claims that he was led to believe that
the policy remained in effect as to plaintiff due to the reference to "your multi-peril policy."  Dkt.
# 21-7; Dkt. # 21-8.

Plaintiff filed this case in Tulsa County District Court alleging claims of breach of contract
and bad faith against CMIC.  Dkt. # 2-1.  CMIC removed the case to this Court on the basis of
diversity jurisdiction.  CMIC filed a motion to dismiss on the ground that plaintiff was not a named
insured under the insurance policy, and plaintiff had no reasonable expectation of insurance
coverage that would support a claim for breach of contract or bad faith.  Dkt. # 8.  After the motion
to dismiss was fully briefed, the Court entered an order (Dkt. # 19) converting the motion to dismiss
into a motion for summary judgment, and the parties were directed to submit any evidentiary
materials, legal authority, and arguments no later than November 22, 2021.  The parties filed
additional materials and evidence in support of their arguments, including copies of the insurance
policy and correspondence from CMIC.

## II.

4

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

5

CMIC argues that the Board, not plaintiff, was the named insured, and the Board removed plaintiff's property from the insurance policy before the incident giving rise to plaintiff's property damage claim occurred. Dkt. # 20, at 10. CMIC further argues that plaintiff is not an additional insured under, or third-party beneficiary of, the insurance policy. Id. at 10-15. Plaintiff responds that it had a reasonable belief that it was covered as an insured under the insurance policy or as a third-party beneficiary, and CMIC should be estopped from denying coverage for plaintiff's property damage claim. Dkt. # 21.

The insurance policy in this case clearly identifies the named insured as the Board, and every document from CMIC to the insured or plaintiff states that the Board is the named insured. The declarations page of the policy clearly states that the named insured is the "Northeast Oklahoma District Church of the Nazarene Advisory Board, Inc." Dkt. # 20-2, at 15. Plaintiff's property, identified as the Midtown Church in the policy, was listed as covered property in the insurance policy prior to January 2020, but so are several other church properties and none of the individual churches is identified as a named insured under the policy. Id. at 19-21. On January 28, 2020, CMIC sent a letter to the Board showing that the Midtown Church property had been removed from the policy and the premiums for Midtown Church had been refunded to the Board. Dkt. # 20-5, at 1-2. The Midtown Church property was removed from the policy after CMIC received an e-mail from the Board on January 20, 2020 requesting that the Midtown Church property be removed from the policy. Dkt. # 20-9, at 1. Plaintiff contends that the Board mistakenly removed the Midtown Church property from the insurance policy, because the Board believed that plaintiff would obtain its own property insurance policy. Dkt. # 21-7, at 1. Plaintiff's lead pastor, Ronnie Baker, contacted CMIC on January 28, 2020, and he received an e-mail stating that CMIC had "attached an electronic

copy of your multi-peril policy." Dkt.# 21-8.   However, there is no evidence that Baker reviewed the attached policy to determine if plaintiff's property was still covered under the policy, and the Board's removal of the Midtown Church property from the policy became effective as of January 20, 2020.

Under Oklahoma law, "[a] breach of contract is a material failure of performance of a duty arising under or imposed by agreement." Lewis v. Farmers Ins. Co., 681 P.2d 67, 69 (Okla. 1983). The three elements of a breach of contract claim are "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." Digital Design Grp., Inc. v. Info. Builders, Inc., 24 P.3d 834, 843 (Okla. 2001).   Insurance policies are contracts and are interpreted in accordance with the general principles of contract law.  May v. Mid-Century Ins. Co., 151 P.3d 132, 140 (Okla. 2006).  "A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context."  Lewis v. Sac & Fox Tribe of Okla. Housing Auth., 896 P.2d 503, 514 (Okla.1994).  "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated."  Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla.1991); see also OKLA. STAT. tit. 15 § 160.

Plaintiff has come forward with evidence suggesting that there may have been a misunderstanding between the Board and plaintiff concerning who would obtain property damage insurance for plaintiff's property, but there is no dispute that the Midtown Church property was not covered under the Board's policy when the lightning strike giving rise to plaintiff's claim for property damage occurred on April 28, 2020.   The evidence clearly establishes that the Board

requested CMIC to remove the Midtown Church property from the policy on January 20, 2020, and CMIC refunded the premiums for this portion of the policy to the Board.  In other words, the named insured requested that certain property be removed from the insurance policy, the premiums for the property were refunded to the Board, and no one was paying for insurance coverage for the damaged property when the incident giving rise to the claim occurred.  Plaintiff argues that it had an insurable interest in the property, and it claims that CMIC is estopped from denying coverage due to its own conduct giving rise to a reasonable expectation of coverage.  Dkt. # 21.  In particular, plaintiff claims that CMIC had previously dealt with plaintiff as if it were a named insured under the policy, and CMIC's conduct gave rise to a reasonable belief on the part of plaintiff that its property was covered under the policy.  Dkt. # 21, at 5.  CMIC does not dispute that plaintiff has an insurable interest in its property or that it previously dealt directly with plaintiff on a prior claim.  Dkt. # 21, at 10-12. CMIC merely points out that plaintiff was not a named insured and its property was not covered under the Board's policy when the lightning strike occurred, and any misunderstanding between the Board and plaintiff does not tend to show that plaintiff had a reasonable expectation that its property was actually insured by CMIC on April 28, 2020.

Plaintiff argues that it reasonably believed that it had insurance coverage under the Board's policy based on a representation by CMIC that it had sent a copy of "your" policy to plaintiff on January 28, 2020.  Dkt. # 21, at 5.  Plaintiff claims that this representation led it to believe that it was insured by CMIC, and it refrained from obtaining a different property insurance policy based on this misrepresentation.  Id.  The Court has reviewed the evidence and does not find that the January 28, 2020 e-mail to Baker referencing "your multi-peril policy" constituted a binding promise or contract that plaintiff was insured as of the date.  The evidence is clear that plaintiff was never a named

insured under the policy and the Board, not plaintiff, was empowered to determine whether the Midtown Church property would be covered under the policy.  Even though CMIC chose to deal directly with plaintiff on a prior claim, the insurance policy and every document sent to plaintiff clearly identified the Board as the named insured.  The e-mail does not contain an affirmative representation or promise by CMIC that plaintiff's property was actually covered under the policy, and the evidence is clear that the Board requested the removal of the Midtown Church property from the policy on January 20, 2020.  Viewing the evidence in a light most favorable to plaintiff, the January 28, 2020 e-mail from CMIC to Baker does not qualify as a binding representation that plaintiff's property was actually insured as of that date.

Plaintiff argues that an insurance policy with the intent to cover a third-party's property gives the third-party the right to enforce the policy as a co-insured or third-party beneficiary.  Dkt. # 21, at 2 (citing Hensley v. State Farm Fire & Casualty Co., 398 P.3d 11, 19 (Okla. 2017)).  However, Audacity Church leaves out a critical part of the ruling in Hensley, which is that a third-party's right under an insurance policy may "be enforced by that person at any time before the parties thereto rescind it."  Hensley, 398 P.3d at 19; OKLA. STAT. tit.. 15, § 29.  Plaintiff may very well have qualified as a third-party beneficiary under the policy prior to January 20, 2020, but the named insured, the Board, amended the insurance policy to remove plaintiff's property from the policy.   The evidence is clear that plaintiff was not a third-party beneficiary under the policy on April 28, 2020 when the lightning strike allegedly occurred, because the plaintiff's property had already been removed from the insurance at the express request of the named insured.

Plaintiff has also asserted a claim for bad faith against CMIC on the ground that CMIC failed to communicate directly with plaintiff before removing it from the insurance policy at the Board's

request. Dkt. # 2-1, at 4.  A claim of bad faith under Oklahoma law requires a plaintiff to show: "(1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury."  Ball v. Wilshire Ins. Co., 221 P.3d 717, 724 (Okla. 2009).  Plaintiff has not shown that CMIC acted in bad faith by honoring the request of the named insured, the Board, to remove plaintiff's property from coverage under the Board's insurance policy.  Plaintiff has come forward with no evidence suggesting that it was an insured under the subject insurance policy with a right to make or object to changes to the insurance policy, and all documents sent to plaintiff concerning the insurance policy clearly identify the Board as the named insured.  CMIC had no duty or obligation to communicate with plaintiff concerning changes to the insurance policy, and CMIC did not violate the insurance policy by removing plaintiff's property from the list of covered properties.  More importantly for the purpose of plaintiff's bad faith claim, the evidence shows that plaintiff was not entitled to coverage for its property damage claim, and CMIC did not act in bad faith by denying coverage.

**IT IS THEREFORE ORDERED** that defendant Church Mutual Insurance Company's motion for summary judgment (Dkt. # 20) is **granted**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that defendant Church Mutual Insurance Company's motion to dismiss (Dkt. # 8) is **moot**.

**DATED** this 21st day of January, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE